**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

**DONALD A. KING** *
*
Plaintiff *
*
v. * Civil No. **PJM 09-977**
*
**AMERIQUEST MORTGAGE CO.** *
*
Defendant *

**MEMORANDUM OPINION**

*Pro se* Plaintiff Donald A. King has filed a Complaint alleging that Defendant, Ameriquest Mortgage Company ("Ameriquest"), engaged in predatory lending practices. He seeks a permanent injunction and other equitable relief.[1] Ameriquest has filed a Motion to Dismiss [Paper No. 5], asserting that the action was not filed within the applicable statute of limitations and thus is time-barred. Additionally, it contends that the action should be dismissed because it is barred by a settlement release that was previously executed by King, which waives all claims against Ameriquest. For the following reasons, Ameriquest's Motion to Dismiss is **GRANTED**.

**I.**

On April 30, 2005, King obtained a loan from Ameriquest in the amount of $330,000 to purchase a home in Bowie, Maryland. The loan had an adjustable rate of 6.5% that would be adjusted on June 1, 2007 and every six months thereafter. On August 15, 2007, King executed an agreement as part of a settlement between the Maryland Attorney General and Ameriquest,

1. On September 25, 2009, King filed a Motion to Amend to Add Indispensable Party [Paper No. 13], which Ameriquest opposed. The Court agrees with Defendant that a mortgage loan service cannot be held liable for alleged origination-related claims against a lender. *See Harris v. Option One Mortg. Corp.*, 2009 WL 2168882 (D.S.C. July 17, 2009). Accordingly, Plaintiff's Motion to Amend is **DENIED**.

entitling him to restitution payments from Ameriquest in exchange for a full release of claims that King had brought or could have brought against Ameriquest arising from the loan transaction.

After news reports of predatory lending practices surfaced in 2008, King states that he became aware that he may have been the victim of fraudulent and predatory lending. This suit followed. King claims that he did not receive proper disclosures or other closing documentation, and that he was charged excessive fees in violation of multiple statutes: the Truth in Lending Act ("TILA"), Real Estate Settlement Procedures Act ("RESPA"), Equal Credit Opportunity Act ("ECOA"), Federal Trade Commission Act ("FTC Act"), and the Fair Credit Reporting Act ("FCRA"). In its Motion to Dismiss the action, Ameriquest argues that any claims that King may have concerning his mortgage are barred both by the governing statute of limitations and the prior settlement release King executed in 2007.

**II.**

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp v. Twombly*, 127 S. Ct. 1955, 1974 (2007). In making its determination, the court must take all well-pled allegations in a complaint as true and construe all allegations in a light most favorable to the plaintiff. *See GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001). The court need not, however, accept conclusory allegations devoid of any reference to actual events. *See E. Shore Markets, Inc. v. J.D. Associates Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir. 2000).

A statute of limitations defense is an affirmative defense that may be brought as part of a motion to dismiss for failure to state a claim under Rule 12(b)(6). Where the allegations in the complaint reveal that an action is untimely under the governing statute or statutes of limitations, dismissal under Rule 12(b)(6) is proper. *See Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005) ("The raising of the statute of limitations as a bar to plaintiffs' cause of action

constitutes an affirmative defense and may be raised by motion pursuant to Fed. R. Civ. P. 12(b)(6), if the time bar is apparent on the face of the complaint.").

**III.**

**A.**

King alleges that Ameriquest violated various federal statutes and Maryland law. Ameriquest argues that all of his claims are barred by the governing statute of limitations.[2]

King and Ameriquest entered into the loan agreement on April 30, 2005. King did not file his Complaint until April 16, 2009, almost four years after he executed his mortgage. Therefore, on the face of the Complaint, the statute of limitations under each of the pled causes of action has run.

**B.**

---

2. TILA: The statute of limitation for seeking monetary damages is one year from the date the parties entered into the mortgage loan agreement. 15 U.S.C. § 1640(e). The statute of limitations for seeking rescission of a mortgage is three years "after the date of consummation of the transaction or upon sale of property, whichever occurs first." 15 U.S.C. § 1635(f).

RESPA: The statute of limitation for actions brought under § 2607 of RESPA (related to unlawful kickbacks and fees) is one year. 12 U.S.C. § 2614.

ECOA: The statute of limitations is two years from the occurrence of the alleged violation. 15 U.S.C. § 1691(f).

FTC Act: The FTC Act itself does not provide a private right of action. The statute of limitations under Maryland's Consumer Protection Act, Maryland's version of the FTC, is three years.

FCRA: King only makes references to FCRA in his prayer for relief and it is unclear whether he seeks to bring a claim under the statute. The Court agrees with the Defendant that even if King were to do so, he has not alleged a claim under FCRA because he has not stated that Ameriquest reported false credit information to a credit reporting agency or failed to conduct an investigation after receiving notice of a dispute from King regarding the accuracy of his credit information.

Maryland law: Although King has not stated a claim for any particular cause of action, any claim under Maryland law that reasonably could apply, such as fraud, fraudulent misrepresentation, or negligence, is time-barred by Maryland's three-year statute of limitations. Md. Code 5-101.

Although statutes of limitations are strictly construed and implied and equitable exceptions are disfavored, *see, e.g., Walko Corp. v. Burger Chef Sys., Inc.*, 378 A.2d 1100, 1102 (Md. 1977), the Maryland Court of Appeals has nevertheless recognized "the unfairness inherent in charging a plaintiff with slumbering on his rights where it was not reasonably possible to have obtained notice of the nature and cause of an injury." *Frederick Rd. Ltd. P'ship v. Brown & Sturm*, 756 A.2d 963, 973 (Md. 2000). Under the so-called "discovery rule," a statute of limitations does not begin to run "until the time the plaintiff discovers, or through the exercise of due diligence, should have discovered, the injury." *Id.* Thus, a cause of action accrues when a person knows or reasonably should know of alleged wrongdoing. *See Lumsden v. Design Tech Builders, Inc.*, 749 A.2d 796, 801 (Md. 2000). In other words, a claim accrues when a person is aware of or should be aware of certain conduct, not when a person becomes aware that the conduct may violate Maryland law.

**C.**

King's position is that, although the loan agreement was entered into on April 30, 2005, his claims are not untimely because: (1) he did not learn of the alleged violations until news reports of predatory lending surfaced in 2008; and (2) Ameriquest's violations are continuing violations that reoccur each month that he is subject to the allegedly fraudulent mortgage.

King claims that on April 30, 2005, the date the loan settled, he was not given proper closing documents and that was charged all of the fees and expenses of which he complains. As for his argument that he did not discover the legal basis for his claims until "news reports of predatory lending surfaced in 2008," the discovery rule applies to the discovery of facts, not to the discovery of the legal basis for a claim. Knowledge of the law is presumed. *Miller v. Pacific Shore Funding*, 224 F. Supp. 2d 977, 986 (D. Md. 2002) ("Knowledge of facts, however, not

actual knowledge of their legal significance, starts the statute of limitations running."). Accordingly, because King had sufficient knowledge of circumstances indicating he might have been harmed on April 30, 2005, that is the date that limitations began to run. *See id.* (finding that the closing date of an allegedly illegal loan was the date when the cause of action arose and started the statute of limitations because it was the date on which "the legally operative facts permitting the filing of his claims came into existence") (citing *Heron v. Strader*, 761 A.2d 56 (Md. 2000)).

King also argues that his claims are not time-barred because he continues to be subject to the underlying mortgage so that Ameriquest's allegedly fraudulent acts and failures to fully disclose information and charges constitute continuing violations every month that he pays his mortgage bill. The Court is not persuaded. In the *Miller* case, plaintiffs argued that limitations were tolled because the allegedly fraudulent fees were included in their loan principal and, in consequence, a new claim under the statute arose as they made each month's payment. *Miller*, 224 F. Supp. 2d at 989-90. The court held that the payment of allegedly fraudulent fees are "no more than the lingering, ongoing, continuing aspects of a unitary action initiated more than three years ago. If . . . that action violates [the statute], the violation has inflicted a single monetary injury whose amount increases steadily over time." *Id.* at 990. The court thus concluded that the limitations clock began to tick on the closing date when the allegedly illegal loan was entered into, and when the allegedly fraudulent fees were imposed. *Id.* at 986.

King's argument is no different. The payment of his mortgage each month does not result in continuous fraud. What is involved is the lingering effects of a unitary action that occurred when he executed the mortgage more than four years ago. As outlined above, the governing statute of limitation under each of the pled causes of action has run. King's claims are time-barred as a matter of law and are dismissed.

**IV.**

Alternatively, Ameriquest argues that King's claims are barred by a prior release he and Ameriquest executed, in which King waived all claims against Ameriquest. A release is interpreted according to its plain meaning if the scope of the agreement is stated in clear and unambiguous language. *See Golub v. Cohen*, 772 A.2d 880 (Md. Spec. App. 2001) ("When the scope of a release agreement is stated in clear and unambiguous language, the words utilized to express this breadth should be given their ordinary meaning as there is no room for interpretation.") (citing *Bernstein v. Kapneck*, 430 A.2d 602 (Md. 1981)). On August 15, 2007, as part of a settlement between the Maryland Attorney General and Ameriquest, King executed an agreement entitling him to restitution payments from Ameriquest in exchange for a full release of all claims that had been brought or could have been brought by him against Ameriquest arising from the loan transaction. The operative language in the release provided:

> In consideration for the restitution payment we are to receive, we release the Ameriquest Parties from all civil claims, causes of action . . . whether known or unknown . . . that arise from or are related to the following lending practices engaged in by the Ameriquest Parties, during the period from January 1, 1999 through December 31, 2005, in connection with the loan account numbers listed above: loan types and terms . . written disclosures . . coordination with debt collectors . . . closing of a loan . . .[etc.]

This language is pellucidly clear; Ameriquest was released from all claims resulting from King's mortgage that he entered into on April 5, 2005. This constitutes a separate and adequate basis for granting Ameriquest's Motion.

**V.**

For the foregoing reasons, the Court **GRANTS** Ameriquest's Motion to Dismiss [Paper No. 5].

A separate Order will issue.

/s/
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

October 29, 2009